Page 125 and 6148. National Council of Nonprofits et al. v. Office of Management and Budget and Resolute Involvement in Social Capacity as Director, Office of Management and Budget at Gallant. Mr. Springer, for you, Gallant is more than ready at police. Good morning, counsel. Mr. Springer, please proceed when you're ready. Good morning, your honors, and may it please the court. Brian Springer on behalf of the federal government. Plaintiffs in this case challenged an interim measure that was designed to address the period of transition from one presidential administration to another. The specific memo at issue was rescinded over a year ago, and we're now at a much later time in this presidency. There would be no conceivable reason to take a materially similar action at this much later time. Indeed, plaintiff's merits arguments in the case depended on the specific features of the rescinded memo and the specific explanation that appeared in that memo. Plaintiff's claims are moot, and they certainly cannot support the preliminary injunction that was entered by the district court. I'm happy to start with the discussion of mootness, which I think, you know, is dispositive here and is the one that the court should reach. You know, as our brief explains, the challenge action here was the OMB memo. I mean, I think plaintiffs make that clear in their complaint at JA-22, and that specific action has, you know, been rescinded. As well, you know, we've had the passage of time, and, you know, final decisions have been made about a lot of the money that, you know, we're talking about as the presidency has sort of, you know, continued. The whole point of this memo was just to sort of take a first pass and do an initial, to have kind of a full review of the money that was going out the door, including, you know, grants that had gone to plaintiffs and others in the prior administration. And when the new administration came in with different priorities, you know, wanted to take a look at the money that was going out the door and to the extent that it could move money around, make a decision about whether to do so. What about the district court findings that even after the memo was purportedly rescinded, there were still some funding that was frozen that appeared to be attributable to the memo? General, I think the district court was sort of focused on the wrong question, because the question is about, you know, what was challenged in the case and what the controversy is that's presented and whether that controversy had, you know, a likelihood of recurring. You know, we fully admit that, you know, there were still the executive orders that were in place that said to pause funding in certain circumstances and that the agencies were pausing funding pursuant to those executive orders. But I think the question, particularly, again, plaintiff's merits arguments, you know, when they're talking about the merits, they're very, very focused on the OMB memo and the specifics of the OMB memo, you know, exactly. Maybe I'm misunderstanding, but I thought that the district court found that there were funding freezes that were still in place after this OMB memo was rescinded that could not be linked to executive orders or other actions and appeared to be where the OMB memo appeared to be the cause or motivating factor, notwithstanding this purported rescission. Am I wrong? The district court didn't make such a finding? Your Honor, I think it is right that the district court did say that there were funding freezes that were continuing, although I think, again, part of the basis- Are you saying that that finding was clear error? Your Honor, we're not saying that it's clear error that the district court said that there were funding freezes that continued. I mean, I think that is, you know, a legitimate thing that the district court found. And in fact, there were such funding freezes going on. Based on that finding found that this really wasn't rescinded. The government was claiming that it was rescinded, but it's not really rescinded. And so that's why I'm going to go ahead and adjudicate this and whether there should be a preliminary injunction. Was that finding clear error? Your Honor, I mean, a couple of responses to that. I mean, I think, first of all, the question that the district court should have asked is whether or not it was likely that the memo was going to be reinstated. And I think that is kind of where the district court instead was focusing on what was actually happening. I mean, I also think that- Why isn't it relevant whether the memo was actually really rescinded? Your Honor, I mean- It can't be moot. You don't get out of the gates on a mootness argument if the memo really hasn't been rescinded. Your Honor, I mean, I think there's no dispute that the memo was rescinded. Of course, the district court thought, you know, that there were still funding freezes that were going on, although those could be attributed to the executive orders that were still in place and remained in place that agencies were required to follow to the extent that they could under the law. I mean, I guess I would also just emphasize that now we are at a much later stage in the case. You know, many things have sort of transpired in the interim. I think that underscores that at least now, if not at the time that the district court ruled this case is moot. I mean, I think the only reason that we're here now is that the district court, instead of just saying, you know, I'm enjoining OMB from applying this memo, which I think would have been pointless because it had been rescinded, but, you know, wouldn't have had a big practical impact. Instead, what the district court did is it went beyond that and included relief that said, even if OMB, you know, could give a fuller explanation or change the timeframes here, or, you know, did sort of a more robust consideration of reliance interest, that it's still possible that that sort of action would be blocked. And I think that is what... Is that why the government, like I've been wondering, why does the government care right now? Because if the memo is rescinded, and suppose the preliminary injunction just barred the implementation of the memo as the district court construed the memo, because you have another argument, which is that there was a misconstruction of the memo, and it's actually narrower in scope than was assumed. But if... Let's just take as a given that the district court construed the memo as the maximalist, in a maximalist way. And then the district court enjoins actions based on that memo. You don't care, right? I think if all the district court had done is said, you can't apply this memo, you know, we may well not be here. I don't think that would have had a big... What is the extra that is concerning you? Sure. I mean, I think in particular, if you look at what the injunction says, it says that you can't sort of reinstate the unilateral non-individualized directives. And I think that has led to some confusion about what OMB is allowed to do, particularly because, as I mentioned, the district court's analysis really focused on the specifics of the OMB memo. You know, I think the problem that the district court identified was it said that the OMB memo wasn't sufficiently explained, that it provided kind of too short of a timeframe, that it, you know, didn't adequately consider reliance interest. That's the... That's incomplete, right? Every time you focus on the specific facts and circumstances, that is about the arbitrary and capricious claim. And you might have a very good argument for those reasons that the arbitrary and capricious claim is moot. The contrary to law claim is different. It's simply OMB does not have independent authority to freeze a substantial amount of federal funding. And why isn't the way to think about this case, the mootness question, whether we have received assurances that OMB is not likely to attempt that again? Sure. I mean, a couple of responses to that. I mean, I think, first of all, the district court's analysis on the contrary to law claim also depended on the specifics of what OMB did here. I mean, again, the district court emphasized that this was, in its view, a freeze of all funding kind of on a moment's notice and without sufficient notice. But again, I mean, I think for all the reasons that, you know, I've discussed this morning, there's still no reason to believe that these plaintiffs would be subject to the same action again in the future, which is the question that is being asked when we're talking about, you know, at least the voluntary cessation doctrine. If OMB attempts to freeze a substantial amount of federal funding, it seems highly likely these plaintiffs will be affected again. And if you take more time and give more notice, the arbitrary and capricious claim would be different. But the contrary to law claim in the complaint is OMB's statutory authority does not allow it unilaterally terminate all federal financial assistance programs across the entire government. So I think what we would have expected to see is a declaration saying, that's not what we did, but even if you think we did, OMB will not try to do that again. And we haven't received that kind of assurance. You know what I mean? I think you have received that kind of, I mean, I think the prospect that OMB at this point, I mean, again, the whole point of this endeavor was, you know, as we were transitioning from one presidential administration to another, there was an attempt to sort of look at all the funding that was going out the door. I think the likelihood, you know, even as sort of the description that you just gave, the idea that OMB is going to unilaterally free, you know, attempt to freeze all funds, which again is plaintiff's characterization. But even if you accept that characterization, the likelihood that that's going to happen again is not high. And so there's, you know, there was no reason for the district court to sort of reach that issue and enter this preliminary injunction. Another way of asking, which seems relevant, is assume the district court was right about the that OMB issued sort of unilaterally a broad federal funding freeze. Does the government believe OMB has statutory authority to do that? General, I mean, we haven't sort of addressed that issue because we don't think that is what the OMB memo did here. But again, I mean, that is the way that plaintiffs are talking about this controversy, and I think the way the district court thought about this. And so that is not something that's likely to occur again, which is the question that's being asked when we ask the mootness question. Right. So in, I'm thinking about the FBI Fikre case, I'm not sure I'm pronouncing it correctly, but the government basically came in and said, based on what we know now, we're not going to relist him for the things we know about today. And there's not really a good reason we can think of. And I think the court unanimously said that doesn't satisfy the burden on voluntary cessation. There needs to be an affirmative representation that the government will not subject these plaintiffs to this type of action again. You know, I mean, I guess that's not how I read. I don't read the case to say that the government has to make such an affirmative representation. I think it is a very contextual analysis. And I think here, the context of how this dispute arose and the context, particularly of the OMB memo, shows that it's unlikely that this is going to occur. I mean, there's just no conceivable reason for OMB to do this again, because it was all tied to the specifics of changing from one administration to another. And, you know, plaintiffs had gotten grants in the prior administration that the new administration with its new priorities wanted to look at and reassess. So I guess you haven't talked about the Q&A clarification that came about the day after the memo was issued. So why don't you talk about that more? I guess I'm not understanding, because if the way that the case has been interpreted so far, including by the district court, is the maximalist interpretation of the memo, and the government itself said within hours that that's actually not the way to interpret it, then does that bear on the likelihood that the maximalist memo, actually, that kind of action would be undertaken again? Sure. I mean, I suppose it, you know, it may show that it's unlikely that that, you know, because, again, that's not what OMB thought happened in the first instance. And I think what OMB saw is that agencies may, in some instances, have been implementing things too broadly. So it stepped in very quickly and said, no, what, you know, we meant by the memo was that it covers these things and doesn't cover these things, just to sort of clarify that and make sure agencies going forward were implementing it correctly. So I think that could bolster the case to show that, you know, the government never thought that this was how broad this was going to be. But even if you sort of, again, take plaintiffs at their own terms and say that's the controversy that they think they put before the district court and that the district court ruled on, that makes it particularly unlikely that it's going to recur. And I mean, it seems to me that bears on the line of questioning that Judge Wilkins had too, if I'm understanding correctly, which is that even if there was funding that was frozen, based on what you think is an erroneous interpretation of the initial memo, what the calendars obviously think is the only possible interpretation of the initial memo, then that's going to take, that's just going to take a little time to unwind. It's just the natural course of things. And then the clarification comes along the next day, and it didn't have the immediate effect because there was, there were interpretations in effect that were going to take some time to unwind. I take it that, would your position be any different if the clarification came along and said not that this is what we meant all along, that's the only fair way to read the initial memo. What if it said, we recognize there's a lot of confusion, we didn't word that well. We actually never meant for it to be interpreted in the way that it is. We just want to clarify that what we mean to freeze is those programs and activities and funding assistance that's tethered, that intersects with the executive orders. We never meant to have a temporary, even a temporary freeze of anything beyond that to the extent that we erroneously indicated that because of the capacious language in the initial memo. We regret that. Would your position be any different if that had been what the clarification had said? Sure. I guess I'm not sure that it would be any different. I think it, you know, I mean, I think we have sort of the form of it where this memo was issued and only very quickly said what meant by the memo is this. We see maybe agencies out in the world are, you know, kind of implementing this more broadly than we thought they would. I just want to clarify that's what we meant by the scope of this memo. And of course, plaintiffs could challenge, you know, to the extent that there was sort of a final agency action and a right challenge. In the appropriate forum, they could challenge, you know, the pauses of funding by agencies if they thought that there was a problem with some individual pause that was still going on. I mean, again, you would have to sort of check all the boxes that are necessary to get one of those challenges in the court. But if there was some specific funding stream or their, you know, money was frozen and they thought that either under a statute or regulation or something that they were supposed to be paid, they could challenge sort of that follow-on, you know, decision. But here, what they're challenging is the OMB memo. The initial memo. That's correct, Your Honor. You briefly said, I think, and then just ran past it, to the extent that there's a final agency action. I didn't understand you to be challenging that there's a final agency action here. Yes, Your Honor. I appeal we are not challenging this OMB memo. You're not. You don't join in that argument, right? That's correct, Your Honor. I appeal. We have a few questions about the merits theory, which in some way tied back to mootness. So, I just want to understand the position you're taking. At times in the brief, it seems to be the assertion that OMB really didn't do anything independently at all. All it did was implement things the president had already ordered. At other times, I know you don't agree with the maximalist version, it seems you're saying OMB has authority to go a little bit further than the president did. Which of those is it? Your Honor, I mean, I think the right way to think about what happened here was that we had these executive orders that came out, you know, very early in the administration that pointed to specific types of, you know, announced certain policies of the United States. And pointed to certain types of funding that should be paused if they were implicated. And I think what OMB did in its memo is it clarified that instruction to agencies to say, here's what you should be doing and here's the way that this should work. And tried to sort of get OMB involved because OMB, you know, is sort of making sure both that the agencies are properly implementing the administration's policies and getting involved in, you know, let us know if you have questions so we can help you with these budgetary matters. So, it sounds like you're saying it's the first thing. That OMB did not direct the freeze of anything that the president had not already directed be frozen. Your Honor, I mean, I think the right way to think about what OMB did is that it said that, you know, the same as the way the executive orders described it, if we're talking about funding that's discretionary, then, you know, to the extent that it may implicate one of the president's executive orders that you should, and you have the, you know, the authority under law to do so, then you should freeze that funding so we can have a more fuller review and discussion about whether to move the funding. That's what I thought the delta is, is that for the OMB memo, the executive orders didn't talk about a temporary freeze, did they? Your Honor, the executive orders did talk about pausing funding. But was it for a time certain while anything was explored? Your Honor, it wasn't for a time certain. I mean, the OMB memo did clarify sort of some of the timeframes. Please get back to us within this time and give us this information so that we can have sort of a fuller discussion. I thought your understanding of what the OMB memo intended to do, as elucidated by the clarification, the next day Q&A clarification, is that for a temporary period, something that may implicate the executive orders ought to be frozen. And then we'll take some time to figure out whether it, in fact, does implicate the executive orders in a way that's problematic. And we'll make a more informed decision at that point whether the freeze is going to continue or not. But am I misunderstanding? No, I think that's right, Your Honor. I mean, the OMB elaborated on what the process should be so that what agencies were doing was sort of making a first pass and saying, here are things that we both think that we have the authority to pause and that we think may implicate these orders so that then there could be a fuller discussion to decide, you know, what the final disposition of those funds should be. And it may not end up being frozen, even if for a temporary period it was, because the clarification said we might even be able to figure this out in a day. Right. That's correct, Your Honor. And, you know, there have been now many final decisions that have been made, some of which have been, let's terminate this funding and move it to something else, some of them to continue to allow the funding to, you know, go out the door. So what, can I ask, why was the initial memo, if it's construed from the government's perspective in the way that the clarification said it ought to be construed, why rescinded? Your Honor, I mean, I think the reason was just that, you know, OMB had seen that there was confusion about how it should be implemented, even with the guidance. And so it just kind of, to make sure that agencies understood they should continue to follow what the executive order suggested, you know, but not to kind of keep the specifics of the OMB memo in place. And I think that's why it was sort of trying to eliminate some of the confusion that had gone out into the world. I'm sure my colleagues don't... It just seems we're glossing over variability in what the EOs said, right? There's sort of two dimensions of what happened that are being disputed. What is the scope of what was frozen and who directed that it be frozen? So assume that there are, which I think is rather clear, there's some category of funding that the president said review, but didn't say pause. And OMB came in and said to facilitate the review, immediately pause, right? Is that your understanding? And are you defending that that is lawful? OMB is adding a temporary freeze to facilitate what the president ordered. Your Honor, I mean, I think what the president ordered in the identified executive orders was a pause of funding to do the review. And so OMB was just sort of implementing how that should actually play out. If the facts were what I said, does OMB have authority to do it? Your Honor, I mean, I don't want to get out ahead of what the agency can do. I mean, I guess I, you know, I think here what we're talking about, and again, you know, I mean, this is something that happened a long time ago. And I think our main objection to what the district court did is it didn't just say you can't apply this OMB memo that I have, you know, found these specific problems with. Instead, it sort of went beyond that and made it so that there's this open-ended injunction that allows the plaintiffs to come into court and, you know, have fights about whether something in the future is too similar to that. And can you just tell me concretely, like, give me the concrete circumstance in which the way the injunction is articulated would raise a concern vis-a-vis something that OMB would like to do? So, Your Honor, I mean, I don't want to specifically say that, you know, this would be prohibited by the injunction. But you could imagine if OMB wanted to issue another memo, and instead of the time frame that it had in the initial memo, it did a time frame of one month. And it included more explanation. It also said very clearly, you know, here's our kind of preliminary consideration of reliance interests and agencies. You should take into account reliance interests. I mean, I think that at least the district court's injunction, it's possible that it would cover that and block OMB from doing that if it was sort of the same thing, but just with fuller explanation, even though the only, you know, the real problem that the district court identified was just one about the specifics of this memo. And I just think that's contrary to, you know, how APA review usually works where you're, you know, directing the relief against, you know, you're saying you can't apply this agency memo or this agency action to the plaintiffs. And just to be clear, and because this can bear on many aspects of the case, the hypothetical that you just laid out, you're talking about a memo that would involve a temporary freeze for funding that's tethered, that might be bound up in executive orders. You're not talking about an across-the-board freeze of all federal financial assistance. I mean, yes, Your Honor. I, you know, I mean, I don't, my understanding is that OMB never had the, you know, under the memo never had the intention to sort of go beyond that. But I just think there's some, especially because what the district court said was unilateral, non-individualized directives. And it's unclear what we're talking about when we say individualized. Does that mean it has to be at the grant level? Does that mean it can be agency specific or sub-agency specific? You know, I think there's just a, or program specific, I just think there's a lot of questions that are left unanswered. And that is what has created some problems for, you know, the government and the reason that, you know, we're here to say that this injunction should be vacant. So let's suppose we were to agree with you that that aspect of the preliminary injunction was too broad or should be vacated at this point, as far as under what circumstances the government could reinstate similar memo or guidance. And we agree with your argument that, you know, this memo has been rescinded. And basically, if the only thing, the only remedy that was properly kind of entered by the district court was essentially stop the effectuation of this memo, that's moot. I guess your position would be that if we were to agree with you and say that the case is moot at this point, if there were ever a situation in the future where one of these plaintiffs had their funding frozen and they believed that it was attributed to this memo because it wasn't really completely rescinded, in fact, even though the administration says it was, your position would be that they don't need a preliminary injunction because they could get whatever relief. If they could establish that their funding was frozen in the future based on the memo that was rescinded, that's essentially either contempt or a laydown case of arbitrary and capriciousness. So they don't really need an injunction for that. And so there's really no point in a preliminary injunction going forward at this point. Is that your position? Sure. Yeah. I mean, to answer, maybe to summarize what you said, I mean, I think our position is that, you know, particularly at the time that the district court entered this preliminary injunction, it went beyond what it should do. And it was overbroad in the respects that we've discussed. And then I think as to the piece that, you know, of the injunction that may kind of look more like traditional APA relief in saying that you can't apply this memo to these plaintiffs because the memo has been rescinded and we're at a very different, you know, time in the presidency and the memo was tied to an early stage of the presidency. There's just no need to have that anymore, particularly given that there's no, you know, semblance that OMB is going to reissue a memo like this and really has no reason to at this point. Has there been, when was the last time the government sought from the district court to reconsider the preliminary injunction or to vacate it? You know, I think there was some, I think after the preliminary injunction was entered, there was some question and fighting about how broadly it extended, whether it extended beyond or could extend beyond open awards. Since then, the government has appealed. And so now that the case is on appeal, I mean, I think, you know, our view is that we can't ask the district court to vacate the injunction that's on appeal. But we think both at the time that the district court entered the injunction, but particularly now, you know, this controversy has become moot and so the injunction should be vacated. Mr. Garcia, you had a question? No. Okay. If my colleagues don't have any additional questions at this point, we'll give you a little time for questions. Good morning, Your Honors, and may it please the court. Jessica Morton for the nonprofit plaintiff at Belize. I'd like to start with the proper construction of the OMB memo and move on to mootness and scope of relief. The OMB memo on 2513 is perfectly clear. It is susceptible to only one reasonable construction and a Q&A document the government issued belatedly does not and cannot undermine that one reasonable construction. I guess I'm not understanding that construct for the following reason that when you say it cannot, because there are just two memos. So one memo comes along at time one and a second memo comes along several hours later. If the second memo says what it says, it cannot undo the first memo because it's just another memo. It's just telling the world there was a first memo out there, and you're going to resist a little bit the way I'm going to spin this out, but just bear with me for a second. The first memo caused a lot of confusion. There's people who are writing stuff in the press. There's a lot of consternation about this. We realize that. Let's just clarify this a little bit more. We're going to let you know that what we really mean by this is it's only a temporary freeze for that line of funding that's implicated in the executive orders. That's all we mean. At that point, is there any doubt that that's the first memo? It kind of doesn't even matter at that point because the second memo is telling you what the first memo means. So the fact that the first memo might have been construed in a particular way, you might be right that that's the best understanding of it. Let's just say I give you that. That's the best understanding of it. The second memo comes along and just says, yes, our bad, but really what we mean is this. At that point, why isn't that just the operative understanding going forward? Three responses, Your Honor. So first, has the government really thought we made a mistake? Everyone is confused. What they could have done instead of issuing a Q&A is simply rescind memo M2513 and issued a new memo that says we're replacing it with this new memo that outlays what we really meant instead of adding this Q&A gloss, and they didn't choose to do that. What? Well, just finish the first two. Finish the next two. Sure, Your Honor. So also, as a matter of logic, the Q&A really just doesn't make sense because the entire point of the original memo is that OMB is ordering a pause so that the agencies can determine in the interim is the word they use, during the pause, what actually falls in the executive orders. And so the pause is to facilitate that determination. And if you're only pausing what is already in the executive orders, it skips that step in the order of operations. That's really not possible to operationalize in the way that this is actually working here. I think, this is really analogous to our deference, Your Honor. We know from Kaiser that you only interpret, only defer to an agency interpreter. So that, again, I understand all these three points. I do as to, and they bear on the best understanding of the first memo when it was issued. But our deference, for example, we're talking about a regulation and then an interpretation that comes along, not a second regulation. Here's two memos. And so I don't, even if that's the best understanding of the first memo, the one that you outlined, and I'll just give you that, and it may be that the second memo, you might be right that, boy, does it even make sense to have a temporary freeze when if it's, the scope is similar to the underlying thing anyway, that may be right too. But that's just what the second memo did. It just did. And so even if the second memo kind of doesn't make a lot of sense in terms of its scope, and I think there's arguments that it might, but even if it didn't, it is just what the government says we meant to do all along. Suppose the second memo was issued 15 minutes after the first one. Well, Your Honor, I'm sorry, were you finished? Yeah, I think I am. But would we still be saying the same, or actually, change it, suppose the second memo were just an attachment to the first one? Well, Your Honor, I think it, I respectfully push back on the idea that being a second memo, it's titled a Q&A. It seems to me clearly giving an interpretation of that first memo rather than being a second command. The first is a clear directive. It uses the word must. Right. I mean, I think I understand all that, but I don't understand why it matters that it's a Q&A as opposed to a memo. I guess my only point is that as far as the legal significance of the two instruments, neither one of them is on a different plane than the other one. They're both just guidances. They both just tell, it's an internal executive branch document. The one says, here's what I need you to do, all you agencies. And then the second one says, actually, here's what I need you to do. Let's just, I mean, suppose that the second one even just says, you know, the first one, we just, we totally sent the wrong signal. I don't even know what we were thinking. That was just really, really misleading. What we really mean is this. At that point, isn't there, it doesn't, it's not like the second one can't cancel the first one. Of course it can, because it's just OMB telling executive branch agencies what to do, and they're just saying, actually, here's what we want you to do. Respectfully, Your Honor, I think the first memo is a clear directive, and the second really is an explanation of, you know, OMB's later post-hoc rationalization having seen the consternation of this cause. I'm sorry to keep belaboring, but I don't understand why that matters, because isn't the second one pretty clear? I don't think it is, Your Honor. On whether the funding that needs to be stopped is only the funding that's bound up with the executive orders. How could it be more clear? Is this a freeze on all federal financial assistance? No, the pause does not apply across the board. At least on that respect, it seems clear. Your Honor, I understand completely what you're saying there, but I do think the order of operations that the original memo puts forward, it still pervades the Q&A. You know, J62, the second page of it, it says, you know, the guidance is establishing the process for the agencies to work with OMB to determine quickly whether it's inconsistent with the EOs. A pause could be as short as a day, and this still, you know, implies to me that the pause is for the purpose, as in memo 13, of determining whether or not it actually does fall within the EOs or not, and so I just don't see a way to operationalize the Q&A that is not consistent with memo 13, and that's how all the agencies really understood it. You know, at J23, there's an email from NSF that was sent after the Q&A saying it's pausing everything because of the OMB memo. Then what would have happened, and by the way, none of this suggests that this was at all clear in the time that this was happening. I mean, I think there was a lot of understandable confusion, and probably this is not, you know, the best way to conduct business with agencies that one is supervising at OMB, probably, given the consternation and confusion that was caused, so I'm not suggesting that, but in terms of the operative effect of this, what if this was in the original memo? This was just an attachment to the original memo. Is there a weird way to do it? I grant you that. I think I interrupted you. I'm sorry. What does that just be? Everybody would know that the original memo isn't a freeze across the board because the attachment says that, so we have to go forward on an understanding. There may be still some confusion about its exact parameters. That happens all the time in internal executive branch stuff. That's when you get on the phone and talk to OMB, as apparently this document indicates it already happened in some instances, and wouldn't that be pretty clear that it's not an across-the-board freeze? I don't think so, Your Honor. I think it's helpful to be clear that what we're talking about is not sort of edge questions, whether something is near an EO or not, but the district court found in the J332 that all of the evidence the plans put forward was about catastrophic freezes that were totally untethered to the executive order. At the preliminary release hearing, the district court asked the government to explain which executive order was responsible for all the pauses, and the government was not able to do that because, as the district court properly understood, the issue here are these freezes happening across the board separate from the executive order. I think there's a lot to that, and I think probably it was the case that a lot of people understandably read the initial memo and feared that it meant an across-the-board freeze, and I guess that's why I keep coming back to the Q&A the next day that just said, and it was regrettable, all the confusion that was causing. It has real-world consequences, so I don't mean to minimize that in the least, but as of the second day when this clarification, the Q&A issues, that understandable understanding just seems to me that it's not on the table because OMB is just telling everybody that's not the way to construe it. I don't think that OMB was saying that clearly. I think we can know that because, you know, it's not just a fear that this is actual harm that happened because the agencies universally implemented the freeze in the way that was properly understood from the original memo and, in fact, you know, did not unfreeze funding until after the court had entered its TRO. Some of our clients didn't get their funds until February 4th or February 6th or even February 7th, and so there's no evidence that I'm aware of in the record that any agency understood the Q&A to be operative. They were still acting at the behest of the must directive in M2513, and so, you know, what we're really challenging is what happened, and there's certainly possible an alternative universe where they had—OMB had immediately recognized a mistake and clarified it. They could have issued a memo that, you know, rescinded M2513 and then cleared the scope that they wanted to. They could have dealt with the agencies. When the court entered its preliminary release, it said, send a notice to the agencies and make it clear that they understand they should no longer be freezing funds at the behest of the memo M2513, and OMB could have certainly done that on its own if they had truly wanted the narrower Q&A version, but they didn't take any of those steps. Do you think the case would be different if instead of saying this is a freeze on all federal financial assistance, no, the policy is not applied across the board, if the OMB had said, to the extent the memo has been construed in that fashion, it's rescinded? Had it been rescinded and then truly rescinded and there was not a suggestion of voluntary cessation as we have here, I think it would be different, Your Honor. Had OMB done something much more concrete in the Q&A? Could I ask you, please? On mootness, if based on the government's representation that this memo, well, you know, they've not just a representation, they've issued a directive saying that it's been rescinded, and then they come to our court and say the case is moot because the memo is rescinded, the government at this point, if we were to declare the case moot, if they would ever act essentially pursuant to this memo to freeze funding, they'd be subject to contempt, subject to all sorts of sanctions. God help them, if I were the district court, and that were to happen. So why do you need a preliminary injunction? Well, Your Honor, a couple of points on that. So just to be clear at the outset, the preliminary relief we have here really is the only thing that has meaningfully changed since we were litigating a year ago, and that is what is keeping this harm at bay. And we have significant evidence in the record, this is at J289, 293, and 296, that our clients and their members will be in imminent irreparable harm the minute that the freeze were to kick back in. We saw in the record, this is around J231, that even one day of a freeze caused some of the damage. So what I'm saying to you is, why would we presume that they would do that, a freeze again, based on this memo, when they have represented to the district court and our court that the memo has been rescinded? And the minute that that happened, I would think that the district judge would have whatever officials responsible for any freeze to be in her courtroom and tell them to bring their toothbrushes because there may not be going back home after the hearing if that's what had happened. So why do you need an injunction? Well, just to clarify the standard, Your Honor, I heard the government, I think, say that we haven't shown a likelihood this might recur. That's really not the standard here. The government bears the burden on newness, and the voluntary cessation area, which we have here, is a formidable burden under SECRA, and they have to show that it's absolutely clear it will not recur. And I would submit that the government has not made that showing. They have not submitted any evidence at all. As Judge Garcia pointed out, in SECRA, the government submitted a declaration, and that still was not sufficient in SECRA, but they haven't even done that here. I heard some statements from counsel that there's asked what concretely, if we declare the case as moot, what are you concerned will recur? Well, Your Honor, if the court were to take the case as moot, then we would very much request that the court not vacate the judgment below under Montgomery Main Court. I think that would be inappropriate for equitable reasons, particularly given the voluntary nature of the mootness here. And so if, in particular, the court were to vacate the preliminary risk below given mootness, then I think that would eliminate all of the options that Judge Wilkins was talking about the district court to continue enforcing. Okay. Right. So what is the concern? Is the concern that OMB will again impose a fraud-based freeze on all federal funding, as you construed the OMB memo? It is, Your Honor. OMB has certainly not shied away from continued interest in funding freezes. We have some examples at pages 46 and 47 of our briefs that lay out some statements from the director about potential freezes they're considering. And the salient point is that we have no evidence that the government won't do this again. It's really their burden to show that they won't recur, and they've put nothing in the record to meet that burden. So I think, not saying I find this persuasive, but what they have said is with this case involved, what the district court's judgment addresses is a broad-based freeze on all federal funding. Here are the reasons you shouldn't think that will recur. We never meant to do that. Two is today, we're not arguing we can do that. And they said today, there's no conceivable reason that we would do that again in the future. And it's not obvious to me that a freeze of a more specific program would be the kind of thing, which are examples of what you have cited in your brief, would be the kind of thing that would keep the question that's framed by this case alive, which is very much tethered to the breadth of the funding freeze. So why shouldn't we be asking, what is the reason to think OMB will attempt to freeze all or nearly all federal funds again? Well, Your Honor, I don't think it's surprising that OMB has not threatened to take an action that they are currently barred from taking by this order. But I do think that, you know, the government has said in court they don't plan to do this, but that's not really the standard under SECRET. It's not the standard they have to put forward some evidence. And, you know, if the court truly believed that this case had been moot, they could have done what they did in National Endowment for Democracy, the United States, which is case number 255361, where the government asked this court to hold their appeal in advance and remanded the district court. They could put forward a motion to dismiss for mootness. They could have asked the district for that here, and they haven't done so. They haven't put forward any evidence that this is absolutely clear it will not recur. So one facet of that that, I think, bolsters the hypo, at least, that Judge Garcia laid out, which is that we never meant to do this in the first place, is the clarification. The Q&A, you mean? Yeah, sorry, the Q&A, yeah. Because there was an understandable interpretation by hypothesis that there was an across-the-board freeze, and then the interpretation comes along the next day. And there's a little bit of confusion about exactly when it happened. I mean, there was, I think, the lawsuit was filed around noon. Then sounds like you all got the Q&A at around 1.30. So who knows exactly what came first. I'm not going to try to deconstruct that. I don't know that anybody knows that. But there were kind of roughly a lot of stuff was happening around the same time, totally understandable, given the rampant confusion. But that's a fact about the world, is that the OMB did issue that clarification that indicates, that conveys that this was never meant to be an across-the-board freeze to begin with. That seems like it could bear on the light on whether there's going to be an effort to do an across-the-board freeze again. That's kind of proof positive that it was never meant to be one to begin with. Well, Your Honor, the district court judge considered those arguments in district court and weighed them with the evidence that all of the agencies had, in fact, continued a broad freeze and determined that, first, that the conduct had not, the conduct, as we understand them, of 2513, had not ceased, and that six minutes had, was voluntary cessation. Those factual findings deserve deference and inferior standard. But I don't know that the district court, first of all, didn't talk about internal movements. And second of all, I don't, I think it may well be true, and the district court was operating under really extenuating circumstances and completely understandably handled the case in the manner it did, especially at the initial stages, when nobody had a real handle on what was going on. But in terms of the effect of the Q&A, it could be that because there was a misinterpretation, and maybe it was the executive order supplementing that, that led to an across-the-board freeze or a too-broad a freeze in some quarters, it takes a little while for that to unwind. So that, and then it did ultimately. That just seems kind of maybe in the natural course of things. It's very unfortunate that that happened, that there was an overage, and probably based on the way that the memo is articulated in the first place. But wouldn't that be the reason, couldn't that be a reason that it took, I mean, are you suggesting that actually the second, the clarification was always meant to be a ruse, and that actually the government didn't mean what it said, and what it really meant was that there should be an across-the-board freeze and that every agency should continue acting as if there's across-the-board freeze, even though we've sent a Q&A that says there's not? Your Honor, the fact that the memo is, in my view and in the view of all the agencies administering it, quite clear. I think it's probative of what the original intent was, and to the extent that the government, you know, really believed that the Q&A is all they had ever intended to do, they could have simply put a declaration in court to that effect, explaining this. They could have asked to remand and made that factual finding more clear. Of course, they rescinded the memo, the first memo the next day anyway. We're talking about things that happened two days into the session, so at that point, I think they're thinking whatever we meant by the Q&A, that's been superseded by the fact that the underlying memo is rescinded. Oh, of course, Your Honor, and then, you know, the freeze continued after that. There is evidence that the Press Secretary put forward that was not rescinded at all, and so in the wake of all of And what do you think? Is it your view, then, that either the rescission or the clarification were not real? I think that the rescission itself was, you know, at best immaterial and clearly not abided by, and I think the district court said at worst an attempt to manipulate the court's jurisdiction, and I think the district court was well within its discretion to understand Apart from the court's jurisdiction, I just mean in the real world, do you think that the rescission actually wasn't a rescission, that the government, that OMB rescinded it, but they were really, there was a wink-wink, nod-nod to other agencies that, yes, we've rescinded it, but, you know, you should still continue to freeze the funds? I'm honestly, I'm not trying to engage in some kind of gross characterization. I'm just wondering what you really think the effect of the rescission, and for that matter, the Q&A was. Well, I think, Your Honor, that the was clear that it was not a rescission, and that the agency is continuing to freeze after that tweet, and after the purported rescission, it may be clear that the agency's understood it that way as well, and had OMB thought, that's wrong, it really was a true rescission, there was more that OMB could have done. For example, sending a notice to the agencies directing them quite clearly to release any funds that they had frozen under their interpretation of memo 2513, and they did not do so. So, what, then, what's the bottom line, then, on the rescission? Do you think it actually was rescinded or not? I don't think, I think it was purported to be rescinded, but I do not think it was a valid rescission. I think that the voluntary cessation doctrine fully applies here. But that would mean that you think, if we, if the PI goes away, then the original memo would just sort of immediately spring back to life. But, you know, now, a year on, that's certainly not what would happen, right? There would need to be some more affirmative action from OMB to reinstate it. I don't know whether that's the case, Your Honor, because after the purported rescission, the agencies continue to implement those freezes in a broad categorical way. What's the latest evidence? Like, how far after? I know there was evidence of that for 48 hours, several days. I'm sorry, Your Honor. It was all from February. So, there's several. So, there's, you know, the EPA sent an email the day after the purported rescission, specifically referencing memo M2513, this is a JA76. We have evidence that there were still freezes as of January 30th and 31st, and then our, some of our client's members only got their funds on February 4th, 6th, and 7th. The last one is at JA309. I was just trying to explore whether it seems like after a week or two, nobody was relying on the OMB memo. I mean, there's no evidence of that. Obviously, we have a TRO and then a PI, so it's hard to sort it out, but. Well, I can answer. Go ahead. The TRO was entered on February 3rd, I believe, and so it's my understanding that, you know, of all the evidence we had through January 31st, that the freeze was continuing, and we saw the freeze start to thaw after the TRO, and the funds coming in on the 4th, 6th, and 7th was in response to the TRO itself and not in response to purported rescission. Maybe I'm missing your position on movements, but I thought your entire brief, the reason you think the case is not moved is because of voluntary cessation, because of the cessation doctrine, that the government has met its burden to show that it wouldn't redo it. But I guess, as it sounds like what you're saying now, there may never have been a cessation to begin with. Both of those, Your Honor. So, I think there never was a cessation at all, and to the extent there was, the voluntary cessation doctrine would apply. So, your position is that the rescission, like, we shouldn't actually actually, we shouldn't take the rescission as a given. It wasn't even a rescission. It was not, what was it? It was just a... I think the, under a laid law, you know, the district court made a factual finding that it had not, in fact, been rescinded, which deserves reference into the error standard. And I'm certainly in no way asking, you know, the court to make a finding of a bad case on anyone's part, but I do think that the district court's finding that it had not, in fact, ceased, or that to the extent that there, you take the rescission for what it's worth, that it was, the voluntary cessation doctrine applies, both deserve reference here as an alternative option. And can I ask just one last question about the tweak, the precedent case tweak, which is the government's interpretation of that is that it's actually not contrary to the rescission, because what it was saying is the OMB memo has been rescinded, but there's still whatever funding freeze remains in effect by virtue of the underlying, by virtue of the executive orders. So it's consistent, actually, with the government's understanding, because the OMB memo was rescinded. That doesn't mean there's no longer any funding freeze anywhere, because the executive orders themselves called for funding freezes in certain respects, and that's what the tweak was about, is that that doesn't mean there's no longer any funding freeze. The funding freeze is still in effect by virtue of whatever the executive orders did. And you think that interpretation is, why do you think that interpretation can't be the way to interpret it? Well, your honor, I think it's at least equally and more plausible to interpret it as the district court did, and the district court in making these findings, you know, giving a plausible interpretation deserves deference. And I think, you know, two points on the tweet. So first, you know, not to parse it too closely, but it is called the federal funding freeze, which is quite different from separate funding freezes per the EOs. And the reference to executive orders is really consistent with how the original memo works, because, you know, it is, as I understand it, I think it's OMB put forward in the original memo, really to—it's created to permit time for the agency to determine what falls under these various executive orders. And so it's a way to implement those orders. And so I think the district court was quite right to understand that as consistent with the court's reading, the district court's reading of MLM 2513. Did the district court make a finding that the memo wasn't really rescinded, or did the district court make a finding that it was rescinded, that there were some agencies that, you know, were slow to comply with the rescission or slow to kind of get the memo, so to speak, that it had been rescinded? I don't have the exact language at the podium, Your Honor, but my recollection is the district court concluded that it was, you know, that the purported rescission was at best sort of a attempt to manipulate the court's jurisdiction. I don't think those are the precise words that she used. But I don't believe the district court made any finding that this was just slow to turn back on, but really, you know, understood properly that all of the agencies were behaving in the same way consistent with M2513. The district court cited, I believe, the Commerce case and said, I don't have to be naive whenever all the agencies are saying something in the same exact way at the same exact time, that that is really probative of what is really happening here. I think, to be fair, weren't all of those statements, all of that was taken as evidence that the OMB memo was intended to be broad, not that it was a distinct issue whether it was rescinded. That's why Judge Ali Khan was looking to agencies' reaction in the first instance to bolster the idea that this was a freeze on all financial assistance. She certainly was, Your Honor, and I don't have perfect recollection whether she, you know, re-upped those findings in the section analysis as well. But the district court certainly did find the voluntary cessation doctrine applied here. So my last question is about how you understand the injunction. Yes, Your Honor. So I'll admit that when I read, and you may not reinstate under a different name, the unilateral non-individualized directives in OMB Memorandum M2513, I actually find that incredibly clear. She's just written an opinion that says, I read the OMB memo to freeze all federal funds. So this is ordering them not to freeze all federal funds again? That's right, Your Honor. Okay. So, but when you then think about mootness, you know, the best indication, I think I asked this question earlier, what's the best indication that the government is going to try again to freeze all federal funds, which is all this case is about? And I think we have, they have an affirmatively disclaimed an intent to do that. And OMB, as recently as last, you know, in the past few months have done more targeted freezes. Is there any other reason to think they will again freeze all federal funding? I think given that they bear the burden to show that, the fact that they put forward no evidence whatsoever is itself probative, Your Honor. Just to amplify, you know, not only Judge Garcia, but also the First Circuit has reviewed that language and in the face of similar vagueness objections from the government, and also found it to be clear, I think, note seven of the district court's order further amplifies the clarity of what, an opinion of what the court is ordering. And just to clarify, one of Judge Wilkins' questions earlier, the government, to my knowledge, did not ask for a freeze of any clarification of district court. The government is correct that there was some briefing about the scope of the order. That was at the part of the plaintiffs. We were asking for an understanding of what open awards meant that the government did not actually ask to clarify at any point in the last year. But I think your answers to me mean, if tomorrow OMB announces, given it some more thought, we are instituting a new 30-day pause of all federal funding, tied specifically and explicitly without any ambiguity to Green New Deal and DEI projects, you'd have to say that's not even covered by this injunction, right? Well, Your Honor, I think that that would be a different case, depending on how it's worded. It's as narrowly tailored as you've suggested. I do think that the statutory authority arguments would be similar in that new case, or district court statutory authority conclusions would be similar in that new case. I don't know if you can help me with this, but there's a very bizarre artificiality to this case, which is all anyone disagrees about on the merits is, did OMB order the freeze of some funds or all funds? If it's all funds, everyone agrees, or no one's arguing otherwise, that it was unlawful. And if it is just some funds, you haven't advanced any argument that it was unlawful. And so the whole thing turns on the interpretation of this memo that's been rescinded. Your Honor, respectfully, I don't think it is an artificial case, because we know what actually happened. And the government has... You could think it's moot while also thinking the district court and the plaintiffs did all exactly the right things. But then a year later, after all the dust has settled, it's hard to see what maintaining this injunction does to protect your clients. If it's only against a new, broad federal funding freeze, it seems like it would be... There's just no reason to think they'll do that. Well, Your Honor, they haven't put forward any evidence that they aren't going to, and they're trying very hard in this appeal to make sure they have the ability to do so again. In West Virginia, the EPA, the court noted that having vigorously defended the legitimacy of their approach was probated in that understanding of mootness, and that the passage of time itself is also not independently sufficient. I think in Sikora, on the basis that parents involved as declining to dismiss the case is moot five years after an alleged voluntary cessation. And so in light of the fact that the government is still contending to this appeal that it has the right to do this, and that they haven't put forward... That's the oddity that I was trying to get at, and it is not obvious that it leads to it being moot. But when you say this, you mean a broad federal funding freeze, and they are not arguing they can do that. That's the oddity, and maybe you're right that it's not moot, because they have not given affirmative representations they won't do it again. But they're not... This is not the Clean Power Plan, and they're defending the legality of generation shifting. They're saying, we never meant to do generation shifting in the first place. Why are we here? So, sorry, that's not a question. No, and as your honor points out, if they have no... If we all have the same understanding of what the preliminary relief actually prohibits, and the government does not have any intention of undertaking those actions, it's hard for me to understand why we're here at this appeal, and also why they haven't taken the very simple steps of putting forward a declaration or other evidence that they do not, in fact, intend to redo another federal funding freeze. Thank you. So, help me understand if we were to say that this case is moot based on the finding that the preliminary injunction only enjoins a unilateral, non-individualized directive from OMB to freeze funds, and an understanding that the government has no intention of... Government represents that that was not what they intended to do in the first place, but putting that aside, they've given no intention that they're going to do that again, and based on that, we find this moot. If the government were to then do another unilateral funding freeze, at that point, the judicial estoppel, I think, would kick in with respect to whether or not the preliminary injunction should just be reinstated, that was the question. Why you still need the preliminary injunction, because one way or the other, them asking us to moot the case, they're either going to have to do, not do what they say that they're not going to do, or the minute they do it, essentially, what would happen would be a motion to reinstate the injunction based on their actions, and they'd be in the same world of trouble as they would have been in had they violated the injunction and it had stayed in effect. What more do you get from... Why isn't that the way that that would play out? Well, Your Honor, I think this conversation really goes to who bears the burden of potential wrongdoing, and under the scenario that Your Honor laid out, if the government were to succeed here and then go and do the thing they said they don't want to do, then we would have to rush into court again, and during that time, we've shown in this case that even a very, very brief eminent freeze would cause irreparable harm to our clients. You mean we'd have to rush into court if we just affirm the injunction? I mean, if they were to take some action in the future to freeze funds, I mean, it's not self-executing. You would have to execute for your clients by going in and seeking contempt or whatever. I do think there's a difference, Your Honor, between the government being under a court order and simply having to worry about explaining themselves to district court if the court order had been vacated. But again, it's not our burden to show we still need this injunction. The law is very clear. It's the government's burden to show that it has become moot, and they have not put forward any evidence that enables it to meet that burden. Well, there's mootness, and then there's also, like, you know, equitable relief, and preliminary injunctions are meant to be not meant to last forever, right? And at some point, a preliminary injunction, you know, outlives its usefulness. And so even if it doesn't technically meet the mootness standard for their voluntary cessation, it would seem to me that as a court of appeals, one option we have is to just say, look, there's really no need for this anymore, and equitable relief, you balance all of these things, and as we balance all of these things, maybe the balance now is different than it was, you know, in February of last year, a year ago. With respect, your honor, two points there. So, first of all, you know, nothing has changed other than the passage of time. You know, the Q&A, the purported rescission, they all had happened before the district court issued its order. That goes to my second point, which is that, you know, the balancing is really in the discretion of the district court judge, and so if there's a question of whether it's become moot now, I think the most appropriate course is to remand the district court to make those factual findings and do that balancing in the first instance. But regardless, if the court does find it moot, we really do think that there's no need to vacate 100 months from now. I'm sure all the colleagues don't have additional questions. Thank you, counsel. Thank you. Mr. Springer will give you three minutes for rebuttal. Thank you, your honors. I think the discussion with the other side and the focus on the specifics of what the memo said or didn't say and what happened a year ago just underscores that this controversy, you know, has become moot and that the district court went beyond resolving the particular controversy that was before it. So, I think that's an important point that sort of comes out in the discussion. And I would just say, I mean, I think, you know, we think that this injunction should be vacated, but at an absolute minimum, the court should clarify it the way that Judge Garcia explained the injunction, you know, to apply just to across-the-board funding freezes. I mean, I think that is something that is very clearly moot. But, you know, that sort of clarification, I think, would have gone a long way if it had been, you know, something that the district court had done. You know, I mean, our real worry here is that OMB obviously has significant statutory authority in this area and the way that the injunction is phrased, there's some fear of it interfering with things that, you know, OMB is permissibly able to do, particularly because, again, the district court's analysis was really focused on the particulars of this memo, the specific contours of the memo, and the specific explanation that appeared in the memo. So, you know, I mean, I think that's really the fear that was generated here. So, we do think that the injunction should be vacated, but at a minimum, it should be clarified. So, that last piece, I don't understand. The district court's opinion was very much about this memo and how it viewed this memo. And it's very clear about how it viewed the memo. It viewed it as a freeze on all federal funding. So, you've represented that there's not been any consideration of anything like that. So, I don't understand what the fear is. If you... Your Honor, I mean, I think there's just language in the injunction in particular. I mean, we discussed earlier about non-individualized directives. You know, it's not just saying, again, the usual relief to enter in a case like this is one that says you can't apply, you know, this memo or this agency action to the plaintiffs. And what the district court said was you can't reinstate under a different name the unilateral non-individualized directives. I think there are questions about what it means to do non-individualized directives. I do think, you know, again, we do think that this injunction should be vacated, particularly because the case has become moot. But at an absolute minimum, the court could clarify that, you know, that is just meant to prohibit across-the-board freezes, which, again, I mean, I think the other side has admitted is sort of what the controversy was here about, and that's the thing that's also not very likely to recur. I'm not saying you had to do it, but you could have gone to the district court and asked for that clarification. Your Honor, I mean, I think we, you know, look, we were sort of engaged in a bunch of different, you know, we have other cases that are going on, and we wanted to make sure that we got the right clarification. I mean, I think at the time, you know, things were very fast moving, and there were decisions that were being made about what to do. And so we, there was a decision made that we should appeal just because we were worried about, you know, the particulars. I mean, and obviously we're also now at a very different stage than we were, you know, even six or seven months ago where there have been sort of final decisions that have been made that have kind of decreased the practical effects of, you know, the case. But you're not able to say OMB has no intention of initiating another broad federal funding freeze? Your Honor, I mean— You can only say you can't think of a good reason they would. Your Honor, I mean, you know, I don't see any reason that OMB would do that, particularly not for the lifespan of this case, which is, you know, we're up here on a preliminary injunction. I mean, I obviously don't want to get ahead of what a future agency can do, and we just want to be sure that this isn't interfering with, you know, permissible things that OMB is allowed to do pursuant to its, you know, clear statutory authority here. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Wilkins; Garcia